UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

GILL W. JASMINE, SR. (#380255)                            CIVIL ACTION

VERSUS

BURL CAIN, ET AL.                                       NO. 12-0743-JJB-RLB

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 23, 2014.

                                                            RICHARD L. BOURGEOIS, JR.
                                                            UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **GILL W. JASMINE, SR. (#380255)** | **CIVIL ACTION** |
| **VERSUS** | |
| **BURL CAIN, ET AL.** | **NO. 12-0743-JJB-RLB** |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motions for Summary Judgment (Rec. Docs. 21 and 59).[1] These motions are opposed.

The *pro se* plaintiff, an inmate previously incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 against Warden Burl Cain, Ass't Warden Kevin Benjamin, Ass't Warden Perry Stagg, Chaplain Robert Toney, Chaplain Bernadine St. Cyr, Dpty Warden Darryl Vannoy, Ass't Warden Leslie Dupont, Director John H. Robson, Secretary James LeBlanc, Dr. Charles Kelly and Col. Bobby Achord, complaining that the defendants have violated his constitutional rights in several respects. Specifically, the plaintiff complains that defendant Dupont falsified a disciplinary charge against the plaintiff in 2004 which resulted in the plaintiff being placed in administrative segregation for 39 days,[2] that defendant Benjamin reneged on a promise to assign the plaintiff to a certain

---

1. The defendants initially filed the instant Motions as Motions to Dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. However, inasmuch as the Court has considered evidentiary materials filed by the plaintiff in opposition to the defendants' Motions, the Motions have been converted by the Court to Motions for Summary Judgment brought pursuant to Fed. R. Civ. P. 56.

2. Whereas the plaintiff's Complaint does not provide the dates upon which many of the events complained of occurred, the Court has been able to glean these dates from other documents filed by the plaintiff in this proceeding. *See*, *e.g.,* Rec. Doc. 23 at p. 2 (referring to

dormitory in 2007 and instead subjected the plaintiff to a retaliatory transfer to a less favorable housing unit, that defendant Robson removed the plaintiff from a job assignment in May, 2011, because of a fight that the plaintiff had been involved in but allegedly did not start, that defendant Stagg thereafter subjected the plaintiff to threats and harassment and, on one occasion, searched the plaintiff's property and read the plaintiff's legal papers, that defendant St. Cyr subjected the plaintiff's fiancé to verbal abuse and refused to officiate at the plaintiff's wedding ceremony at LSP in January, 2012, and finally, that in May and June, 2012, defendants Benjamin, Stagg, Toney, St. Cyr, Achord and Cain attempted to induce the plaintiff and other inmate ministers to volunteer to transfer to a more dangerous part of the prison for the purpose of assisting prison officials in stabilizing an unruly area and in reporting on wrongdoing by inmates and security officers at that location.  When the plaintiff refused to cooperate with the defendants' urgings in this regard and refused to become a "snitch" or "informant" for prison officials, and when the plaintiff's father telephoned the prison on May 29, 2012, to complain of the proposed transfer, the plaintiff was instead transferred, in June, 2012, to David Wade Correctional Center ("DWCC") in Homer, Louisiana, in retaliation for his refusal.  The plaintiff further complains that, in connection with this transfer, he was reclassified to a more restrictive security status, was denied the right to participate in the inmate minister program at DWCC, and was issued a limited duty status and assigned to a job which resulted in lower wages than he had received at LSP as an inmate minister.

In response to the plaintiff's allegations, the defendants first seek dismissal, on

---

the plaintiff's placement in administrative segregation due to an alleged wrongful disciplinary report issued by defendant Dupont in 2004); Rec. Doc. 101 at p. 12 (referring to a proposed bed assignment by defendant Benjamin in 2007); Rec. Doc. 101 at p. 31 (referring to the plaintiff's removal from a tutoring program by defendant Robson in June, 2011, due to an accusation of fighting); and Rec. Doc. 23 at p. 2 (referring to the plaintiff's wedding in January, 2012).

jurisdictional grounds, of the plaintiff's claims for monetary damages asserted against them in their official capacities. In this regard, the defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks the recovery of monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id.* at 25. Accordingly, the plaintiff's claims asserted against the defendants in their official capacities for monetary damages are subject to dismissal. In contrast, the plaintiff's claim for monetary damages asserted against the defendants in their individual capacities remains viable because a claim against a state official in an individual capacity, seeking to impose liability for actions taken under color of state law, is not treated as a suit against the state. *Id.* at 29.[3]

Turning to the plaintiff's claims which are not subject to dismissal on jurisdictional grounds, the defendants next assert that the plaintiff has failed to state a claim upon which relief

---

3. Although the plaintiff's original Complaint asserted an official-capacity claim against the defendants for declaratory and injunctive relief and although such a claim would not be prohibited under the Eleventh Amendment, specifically because such a claim is not treated as a claim against a state, *Will v. Michigan Department of State Police, supra*, 491 U.S. at 71, 15 *Am. Jur. 2d Civil Rights* § 101, the plaintiff has since been transferred from the David Wade Correctional Center to the Elayn Hunt Correctional Center in St. Gabriel, Louisiana. Accordingly, inasmuch as the plaintiff is no longer subjected to any alleged wrongful conduct at DWCC, his claim for prospective relief has been rendered moot by his transfer, and this claim is no longer properly before the Court. *See, e.g., Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (recognizing that an inmate's transfer from an offending institution normally "render[s] ... claims for declaratory and injunctive relief moot"). This aspect of the plaintiff's lawsuit, therefore, is subject to dismissal.

may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and more recently, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to state a claim upon which relief may be granted under 42 U.S.C. § 1983.  Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level".  *Bell Atlantic Corp. v. Twombly, supra*, at 555.  Moreover, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal, supra*, at 678, *quoting Bell Atlantic Corp. v. Twombly, supra*.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendants are liable for the misconduct alleged." *Id.*  It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679.  "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (internal quotation marks omitted).

In connection with a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court generally accepts as true the factual allegations contained in the Complaint.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  This is also true in connection with a a motion for summary judgment under Rule 56, provided that the factual allegations are properly supported by evidentiary submissions.  *See Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 349 (5th Cir. 2001).  Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Id.* (citation omitted).  Notwithstanding, the Court need not

accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, at 678 (internal quotation marks omitted).

Initially, the Court agrees with the defendants that the plaintiff's claim for compensatory damages fails as a matter of law. Pursuant to 42 U.S.C. § 1997e(e), a prisoner plaintiff is barred from receiving compensatory damages for mental or emotional injury in the absence of some showing of physical injury. In the instant case, the plaintiff has not alleged that he has sustained any physical injury as a result of the defendants' alleged wrongdoing. Accordingly, this aspect of the plaintiff's claim must be rejected. Notwithstanding, the plaintiff might still be entitled to recover nominal or punitive damages, provided that he were able to make a showing that the defendants intentionally violated his constitutional rights. *Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007).

Turning next to a substantive consideration of the plaintiff's claims, and taking into account the evidentiary submissions filed by the plaintiff herein, the Court concludes that the plaintiff fails to state a claim for which relief may be granted relative thereto. First, the plaintiff asserts a claim against defendant Dupont regarding an alleged wrongful disciplinary charge and associated placement in administrative confinement for a period of 39 days in 2004. This claim is not one of constitutional significance.[4] Specifically, the mere issuance of a false disciplinary report and the imposition of resulting punishment, without more, does not amount to a

---

4. Although not asserted by the defendants, it appears that many of the plaintiff's claims, specifically those relative to events occurring more than a year prior to the filing of his Complaint in November, 2012, are barred by the applicable statute of limitations. In this regard, inasmuch as there is no federal statute of limitations for claims brought pursuant to 42 U.S.C. § 1983, a federal court must borrow the forum state's general personal injury limitations period for such claims. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989). In Louisiana, the applicable period of limitations is one year. La. Civ. Code Art. 3492.

constitutional violation.  *Collins v. King*, 743 F.2d 248, 253-54 (5th Cir. 1984).  Further, the United States Supreme Court has held that prison disciplinary proceedings do not implicate any constitutionally protected liberty interest unless the resulting punishment subjects an inmate to an atypical and significant deprivation (evaluated in the context of prison life) in which the State might conceivably have created a liberty interest for the benefit of the inmate.  *Sandin v. Conner*, 515 U.S. 472, 486 (1995).  In *Sandin*, the Supreme Court concluded that a disciplinary sentence of placement in segregated confinement failed to rise to the level of a constitutional claim.  In the instant case, this Court similarly concludes that the plaintiff's disciplinary punishment, which apparently amounted to no more than placement in administrative segregation for 39 days, did not result in an atypical and significant deprivation within the context of normal prison life.  *See Dickerson v. Cain*, 241 Fed. Appx. 193 (5th Cir. 2007) (finding that placement in segregated confinement at LSP was not an "atypical or significant hardship").  Accordingly, the plaintiff's claim in this regard is without merit in a constitutional sense.

   The plaintiff next complains that defendant Benjamin promised to assign the plaintiff to a certain LSP dormitory or bed in 2007 but then reneged on this promise and assigned the bed to a co-inmate.  Thereafter, defendant Benjamin threatened the plaintiff with retaliation if the plaintiff complained to supervisors about the wrongful bed assignment and, when defendant Benjamin learned that the plaintiff was in fact attempting to make such complaints, the defendant allegedly retaliated by transferring the plaintiff from a trustee dormitory at LSP to a less favorable dormitory.  This claim is also not one of constitutional dimension.  The plaintiff is not constitutionally entitled to any particular housing assignment while confined in prison, *see Adams v. Epps*, 334 Fed. Appx. 688 (5th Cir. 2009) (holding that the plaintiff "does not have a protectable property or liberty interest in where he is housed"), and inasmuch as § 1983 protects

only against the violation of federal constitutional and statutory rights, *see Anderson v. Jackson*, 556 F.3d 351, 356 (5th Cir. 2009), the plaintiff may not here complain regarding a mere broken promise by defendant Benjamin relative to a bed assignment.  Further, although an inmate plaintiff is legally entitled to complain through proper channels regarding a purported act of retaliation undertaken by a prison official in response to the inmate's exercise of constitutional rights, *see Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006), the inmate is required to allege an adverse retaliatory act which is greater than merely *de minimis*. *Id.* at 686.  In the instant case, the plaintiff alleges only that defendant Benjamin ordered the plaintiff transferred from one dormitory to another in retaliation for the plaintiff's complaints regarding the referenced bed assignment.  In the Court's view, such a transfer is only a *de minimis* adverse retaliatory act and is not sufficient to support a claim for retaliation under § 1983.  *See Howell v. Quarterman*, 2008 WL 4724486, *11 (S.D. Tex. Oct. 24, 2008) (finding that a transfer to a less desirable cell was a *de minimis* retaliatory act).  *Compare Parker v. Carpenter,* 978 F.2d 190, 192-93 (5th Cir. 1992) (concluding that a transfer to a more violent prison may be more than a *de minimis* retaliatory act).  Accordingly, this claim is also subject to dismissal.

      The plaintiff next complains that in June, 2011, defendant Robson removed the plaintiff from a job assignment as an inmate tutor because of a fight that the plaintiff had been involved in with a co-inmate in May, 2011.  According to the plaintiff, this removal was unfair because the plaintiff did not start the fight and because other inmates who had been found guilty of rule violations at LSP had been allowed to retain their positions with defendant Robson's tutoring program.  Notwithstanding, the plaintiff acknowledges in his Complaint that the referenced dispute between himself and defendant Robson was thereafter resolved with the help of another prison official, defendant Warden Perry Stagg, and as a result, the most that the plaintiff can

complain about regarding this incident is the loss of approximately two months of assignment to the referenced program. Inasmuch as the plaintiff is not constitutionally entitled to any particular job assignment or classification while confined in prison, *see Bulger v. United States Bureau of Prisons*, 65 F.3d. 48, 50 (5th Cir. 1995), this claim is not one of constitutional magnitude. Further, the plaintiff has not sufficiently alleged or shown that he was situated similarly to any other inmates who he asserts were treated differently, or that he was singled out for disparate treatment with discriminatory intent so as to support a claim of the denial of his right to equal protection. *See Woods v. Edwards,* 51 F.3d 577, 580 (5th Cir. 1995) (rejecting an inmate's claim that he was maintained in segregated confinement while other inmates were released). Accordingly, this claim is also without merit and should be dismissed.

      The plaintiff next complains that defendant Perry Stagg verbally insulted and threatened the plaintiff on unspecified dates regarding telephone calls which the plaintiff's family had been making to prison officials on the plaintiff's behalf. In addition, although defendant Stagg allegedly "fixed" the above-referenced dispute between the plaintiff and defendant Robson, defendant Stagg thereafter entered the plaintiff's dormitory on one occasion and conducted a search of the plaintiff's property, "reading [the plaintiff's] legal papers." Complaint at p. 13. These allegations to not amount to a claim of constitutional dimension. First, mere verbal harassment in the form of threats, insults and harassment, do not amount to a constitutional violation. *Orange v. Ellis*, 348 Fed. Appx. 69, 72 (5th Cir. 2009), *cert. denied*, 559 U.S. 981 (2010); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.), *cert. denied*, 464 U.S. 998 (1983). Second, inmates do not have a valid privacy interest in their personal belongings in prison, and the periodic searches of their property are a usual and expected part of prison life. *Jackson v. Mizzel*, 361 Fed. Appx. 622, 627 (5th Cir. 2010). Further, to the extent that the plaintiff's

allegations may be interpreted as suggesting that the reading of his "legal papers" violated his First Amendment right to access to the courts, the plaintiff has failed to allege or show that he suffered any detriment or legal prejudice in fact as a result of the defendant's conduct on a single occasion, which detriment or prejudice is a prerequisite to an access-to-courts claim. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that an access-to-courts claim requires a showing that an inmate has been "hindered [in] his efforts to pursue a legal claim"); *Gonzalez v. Seal*, 2013 WL 6244183 (E.D. La. Dec. 3, 2013) (rejecting an inmate's claim regarding the destruction of legal documents during a cell search where the plaintiff failed to allege or even imply "that the defendants ... in any way impeded his efforts to file non-frivolous legal documents in any court"). This claim as well, therefore, is subject to dismissal.

The plaintiff next complains that defendant Bernadine St. Cyr made "disturbing" remarks on the telephone to the plaintiff's fiancee and refused to officiate over the plaintiff's wedding ceremony in January, 2012. Complaint at p. 14. As previously noted, however, mere hurtful verbal remarks do not amount to a constitutional violation, and the plaintiff concedes that he suffered no harm or prejudice in fact as a result of the defendant's refusal to officiate inasmuch as his wedding thereafter took place and was officiated over by another chaplain. *Id.*

Finally, the plaintiff complains of events occurring in May and June, 2012, when he and a group of LSP East Yard inmate chaplains were called to a meeting attended by defendants Benjamin, Stagg, Toney, St. Cyr and Achord. At that meeting, which took place on May 25, 2012, the defendant prison officials informed the plaintiff and other inmate ministers of an attempted murder which had recently been committed by one inmate against another in the prison's West Yard. The defendants advised the assembled chaplains that, inasmuch as prison officials had received little or no assistance from co-inmates living in the area of the offense, the

defendants were seeking East Yard inmate ministers to volunteer to transfer to the West Yard "to live in dorms to let security and administration know what is going on with offenders in the dorms." Complaint at p. 15. However, when an insufficient number of volunteers came forward, the defendants became angry and convened a second meeting, this one attended by defendant Cain, at which defendant Cain again advised of the perceived need to transfer East Yard inmate ministers to the West Yard dormitories and threatened that if any inmates refused, defendant Cain "would make that offender minister['s] life ... a living hell." Complaint at p. 17. Shortly thereafter, prison officials chose thirty-two (32) inmate ministers, including the plaintiff, to be transferred to the West Yard dormitories.

As a result of the foregoing, the plaintiff's father contacted defendant Benjamin by telephone on May 29, 2012, and expressed a concern that the impending transfer would place the plaintiff's life at risk because of the supposed more dangerous conditions in the West Yard dormitories and because of the danger that the plaintiff would be labeled a "snitch" or "informant" by co-inmates. Notwithstanding, defendant Benjamin allegedly responded that the plaintiff needed to "come out of [his] comfort zone" and that if the plaintiff had not wished to face the possibility of ministering to co-inmates in various parts of the prison, the plaintiff "should not have gotten into the Bible College." Complaint at p. 18. Defendant Benjamin further allegedly advised the plaintiff's father that if the plaintiff refused to transfer to the West Yard, the plaintiff would be placed in administrative segregation, would lose his assigned trustee status, and would be transferred to a working farm-line or perhaps to a different institution. *Id.* When the plaintiff thereafter refused to transfer to the LSP West Yard dormitory, he was transferred in June, 2012, approximately a week after his father's telephone call, to David Wade

Correctional Center in Homer, Louisiana.[5] The plaintiff asserts that the defendants' plan to transfer him to the West Yard dormitories at LSP constituted deliberate indifference to his health and safety and that his subsequent transfer to DWCC constituted impermissible retaliation in response to his exercise of constitutional rights. The plaintiff further complains that, as a result of his transfer to DWCC, he lost his trustee status, was re-classified as a limited-duty medium-security inmate, was not allowed to participate in the inmate minister program at DWCC, was deprived of the higher salary that he had earned as an inmate minister, and was forced to live geographically far from his wife and family.

Accepting the foregoing factual recitation as true, the Court nonetheless concludes that the plaintiff has failed to state a claim upon which relief may be granted. First, although he asserts that the defendants were deliberately indifferent to his safety and well-being by seeking to transfer him to the West Yard dormitories, this claim must fail. Specifically, merely because an incidence of violence had recently occurred at that location does not establish that the West Yard dormitories presented a substantial risk of serious harm, either to the plaintiff individually or to inmates in general. Nor does the plaintiff provide any facts to support his conclusory assertion that the West Yard at LSP was a substantially more dangerous housing assignment than the East Yard. It is well-recognized that prisons are violent places and that prison officials are not able to eliminate all threat of injury or harm to the persons confined therein. *See Farmer v. Brennan, supra*, 511 U.S. at 858-59 (Thomas, J., concurring) (recognizing that "[p]risons are necessarily-dangerous places," which "house society's most antisocial and violent people in close proximity with one another," thereby making it inevitable that "some level of brutality ...

---

5. The plaintiff has since been transferred to the Elayn Hunt Correctional Center in St. Gabriel, Louisiana.

among prisoners" may occur). *See also Verrette v. Major*, 2011 WL 3269319 (W.D. La. July 29, 2011) (dismissing an inmate's failure-to-protect claim upon a finding that, even if prison officials were aware of an inmate's history of violence, "[p]risons are dangerous places housing dangerous people," and "[i]t is unreasonable to believe persons overseeing the classification of inmates for work assignments and housing can prevent all potential prisoner-on-prisoner violence"). The plaintiff in this case has not identified any specific co-inmate or co-inmates who intended to cause him harm at the transferee location; he has not alleged that he informed prison officials of the identities of any such inmates or of any particularized danger which he faced; and he was not *in fact* subjected to any danger as a result of the defendants' conduct because he refused the transfer to the West Yard and was, instead, transferred to another prison. *See Hoskins v. Epps*, 2013 WL 4777315, *3 (S.D. Miss. Sept. 5, 2013) (rejecting an inmate's claim regarding an alleged failure to protect him from harm at the hands of co-inmates where the inmate was not injured in fact, did not identify any specific co-inmates who wished him harm, was thereafter transferred to a different location, and "failed to assert facts which would show that he ever faced a substantial risk of serious harm"). In the instant case, as in *Hoskins, supra*, the plaintiff has failed to allege facts or present evidence which suggest that the defendants were deliberately indifferent to his safety or that they were aware of a substantial risk of serious harm which they ignored. Accordingly, this claim must be rejected.[6]

The plaintiff also complains that his subsequent transfer to DWCC was undertaken in retaliation (1) for his refusal to accede to the request that he transfer to the LSP West Yard,

---

6. While it is true that prison officials may, in some instances, exhibit deliberate indifference to an inmate's safety by intentionally labeling him a snitch or informant, *see White v. Fox*, 294 Fed. Appx. 955, 962 (5th Cir. 2008), the defendants in the instant case did not in fact do so.

and/or (2) for his having complained about the defendants' alleged wrongful conduct, prompting his father to contact prison officials by telephone on May 29, 2012.  This claim also must fail.  Specifically, the Court finds that the defendants are entitled to qualified immunity in connection with this claim.  In this regard, the taking of action against an inmate in retaliation for the inmate's exercise of constitutional rights may itself amount to a violation of the inmate's constitutional rights.  *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996).  Claims of retaliation by prison inmates, however, are regarded with skepticism, lest the federal courts potentially embroil themselves in every adverse act that occurs within a penal institution.  *Id.* at 1166.  Accordingly, to prevail on a claim of retaliation, a prisoner must establish (1) that he was exercising or attempting to exercise a specific constitutional right, (2) that the defendant intentionally retaliated against the prisoner for the exercise of that right, (3) that an adverse retaliatory action, greater than *de minimis*, was undertaken against the prisoner by the defendant, and (4) that there is causation, *i.e.*, that "but for" the retaliatory motive, the adverse action would not have occurred.  *Morris v. Powell*, *supra,* 449 F.3d at 684.  *See also Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999).  If an inmate is unable to point to the exercise of a specific constitutional right, his claim will fail as a matter of law.  *See Tighe v. Wall*, 100 F.3d 41 (5th Cir. 1996) (dismissing an inmate's claim for failure to demonstrate the exercise of a specific constitutional right); *Woods v. Smith, supra*, 60 F.3d at 1166 (observing that, "[t]o state a claim of retaliation an inmate must allege the violation of a specific constitutional right").  Further, the inmate must allege more than a mere personal belief that he is the victim of retaliation.  *Jones v. Greninger, supra,* 188 F.3d at 325; *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997).  Finally, to demonstrate the requisite retaliatory intent on the part of a defendant, the

inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly by inferred. *Woods v. Smith, supra,* 60 F.3d at 1166.

In the instant case, the plaintiff's claim of retaliation fails as a matter of law. First, although he asserts that he was retaliated against for refusing to agree to transfer to the LSP West Yard to act as an informant, this assertion does not implicate the exercise of any specific constitutional right. As previously noted, the plaintiff does not have a constitutional right to any particular housing location, and the Courts of this Circuit have also concluded that inmates do not exercise any constitutional right when they refuse to act as informants for prison officials. In *Bradley v. Rupert*, 2007 WL 2815733 (E.D. Tex. Sept. 25, 2007), the plaintiff complained that an officer had retaliated against him because he would not provide information regarding the theft of another inmate's radio. In rejecting the plaintiff's claim, the Court stated:

> This allegation does not show that [the defendant] retaliated against Bradley for the exercise of a constitutional right; while Bradley may have had good reason for refusing to provide the information, his right to do so is not protected by the constitution of the United States. Hence, Bradley has failed to set out a valid retaliation claim on this point.

*Id.* at *6. *See also Guy v. LeBlanc*, 2012 WL 5286968, *3 (M.D. La. Sept. 19, 2012) (rejecting an inmate's claim of retaliation – for failure to identify the exercise of a specific constitutional right – where he asserted "that his transfer to a more restrictive housing unit was done in retaliation for his refusal to provide information"); *Hardeman v. Quarterman*, 2010 WL 3782843, *1 (E.D. Tex. Sept. 20, 2010) (same, finding that the inmate plaintiff failed to identify a specific constitutional right when he complained that disciplinary charges and punishment were motivated by retaliation "in response to his refusal to provide information regarding the wrongdoing of other prisoners and/or prison employees"). And to the extent that there may exist any legal question as whether an inmate has a constitutional right in this context, *see David v. Hill*, 401 F.Supp.2d 749, 757 (S.D. Tex. Nov. 16, 2005) (assuming, without deciding, that an

inmate plaintiff may have a constitutional right not to participate in a prison investigation); *see also Welch v. Chapman*, 2008 WL 544618, *4 (E.D. Mich. Feb. 27, 2008) (recognizing a split in the Circuits relative to the existence of such a right), the right was not so clearly established as to be clear to prison officials in this case that they could not retaliate against the plaintiff for refusing to provide information. Accordingly, the defendants are entitled to qualified immunity relative to this claim. *See Welch v. Chapman, supra,* at *5 (granting qualified immunity in favor of the defendants in light of "the dearth of authority ... to support a constitutional right to be an informant, and the split of authority in other districts").

 Nor is the plaintiff's assertion of his First Amendment right to complain to prison officials concerning alleged wrongful conduct sufficient to support his retaliation claim in this case. Although the plaintiff asserts that he was exercising his constitutional right to complain when he contacted his father to report the impending transfer to the LSP West Yard dormitories and although he asserts that his father thereafter contacted prison employees by telephone on May 29, 2012, to complain regarding such transfer, this assertion fails for at least two reasons. First, an inmate's right to complain to supervising officials regarding alleged misconduct by subordinate officers is limited to complaints which are made through "proper channels." *See Hanna v. Maxwell*, 415 Fed.Appx. 533 (5th Cir. 2011) (rejecting an inmate's claim of retaliation where the alleged retaliation was not for asserting complaints through proper channels), *relying on Morris v. Powell, supra*, 449 F.3d at 684; *Sanchez v. Allen*, 2013 WL 5829156 (E.D. Tex. Oct. 29, 2013) (same); *Rankin v. Pearson*, 2013 WL 1305517 (S.D. Miss. March 26, 2013) (same). In the instant case, the plaintiff does not assert that he filed any administrative grievances or otherwise directly complained to prison officials regarding the alleged wrongful transfer. All that he asserts is that he contacted his father who then telephoned prison officials to

complain. This does not appear to be an assertion of a complaint through "proper channels" so as to support a claim of retaliation. *See Thomas v. Thomas*, 46 Fed. Appx. 732 (5th Cir. 2002) (rejecting an inmate's claim of retaliation where he failed to "indicate that he complained ... to supervisors and then suffered retaliation for exercising his constitutional right of access to the courts"). Second, the plaintiff cannot show causation between the supposed exercise of his constitutional right to complain to prison officials and his subsequent transfer to DWCC. Specifically, it is clear from his allegations that he believes that he was transferred to DWCC, not because of his complaints or those of his father but, instead, because of his refusal to agree to transfer to the LSP West Yard dormitories.[7] The mere fact that his father may have telephoned the prison to complain of the impending transfer does not reflect that the plaintiff was transferred to DWCC because of his or his father's complaints. Accordingly, the transfer was not motivated by any exercise of the plaintiff's First Amendment constitutional rights, and this claim is subject to dismissal as being without constitutional foundation.[8]

---

7. The Court notes that the plaintiff also includes in his Complaint certain claims relative to his confinement at DWCC after he was transferred to that institution. The Court finds, however, that these claims, specifically concerning his custody classification, his job assignment, his distance from family members, and the wages afforded to him at DWCC, are not of constitutional dimension. As previously noted, the plaintiff has no constitutional right to complain regarding his location, classification, or job assignment while serving a state criminal sentence in the custody of the Louisiana Department of Corrections. Accordingly, this claim is without merit.

8. Although defendants Charles Kelly and Bernadette St. Cyr have not appeared in this proceeding, the Court is able to dismiss the plaintiff's claims asserted against these defendants for the same reasons as are here provided relative to the other defendants named in this proceeding. Specifically, pursuant to 28 U.S.C. §§ 1915(e) and 1915A, this Court is authorized to dismiss an action or claim brought by a prisoner against a governmental official or employee if satisfied that the action or claim is without merit, as when it is frivolous or fails to state a claim upon which relief may be granted. A § 1915 dismissal may be made at any time, before or after service of process and before or after an answer is filed. *See Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986). Accordingly, the Court includes in its Recommendation that the plaintiff's claims asserted against defendants Kelly and St. Cyr be dismissed as well.

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.  28 U.S.C. § 1367.  In the instant case, having considered the allegations of the plaintiff's Complaint and having recommended that the plaintiff's federal claims be dismissed, the Court further recommends that the exercise of supplemental jurisdiction be declined.

## RECOMMENDATION

It is recommended that the Court decline the exercise of supplemental jurisdiction over the plaintiff's state law claims and that the defendants' Motions for Summary Judgment, rec.doc.nos. 21 and 59, be granted, dismissing the plaintiff's claims asserted against the defendants, with prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on January 23, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE**